UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIAN DUANE LORD,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                     /

Case No. 1:13-cv-409
Hon. Hugh W. Brenneman, Jr.

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on December 19, 1962 (AR 142).[1] He alleged a disability onset date of June 20, 2007 (AR 142). Plaintiff completed one year of college and had previous employment as machinist (AR 148, 156). Plaintiff identified his disabling conditions as diabetes, cardiovascular disease, artery disease, depression, a heart attack, chronic leg pain and chest pain (AR 147). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 5, 2011 (AR 15-29). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 20, 2007 and met the insured status requirements of the Social Security Act through December 31, 2012 (AR 17). Second, the ALJ found that plaintiff had severe impairments of coronary artery disease,

diabetes mellitus and an affective disorder (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). Specifically, plaintiff did not meet the requirements of Listing 12.04 (affective disorders) (AR 20-22).

The ALJ decided at the fourth step that:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: lifting up to 20 pounds occasionally and 10 pounds frequently; stand/walk 2 hours and sit 6 hours in an 8 hour workday, with normal breaks; occasionally climb, stoop, kneel, crouch and crawl; frequently balance; in work limited to simple, routine, and repetitive tasks.

(AR 22). The ALJ also found that plaintiff was unable to perform his past relevant work as a machinist (AR 28).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy and the regional economy (defined as the State of Michigan)[2] (AR 28-29). Specifically, plaintiff could perform the following: 30,000 manufacturing jobs (assembly, sorting, grading and manufacturing); and 25,000 clerical jobs (general office clerk, file clerk and photocopy machine attendant) (AR 28-29). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 20, 2007 (the alleged onset date) through January 5, 2011 (the date of the decision) (AR 29).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A.  The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.**

---

[2] While the ALJ's decision did not name the region at issue, the vocational expert defined the region as the State of Michigan (AR 62).

4

Plaintiff contends that the ALJ failed to properly consider the opinions of his treating primary care physician, Herman Lescay, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004);

5

20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

       Here, the ALJ addressed Dr. Lescay's opinions as follows:

> As for the opinion evidence, in November 2010 claimant's primary care physician Herman Lescay, M.D. opined claimant could sit only 60 minutes, stand only 60 minutes, and walk only 30 minutes total in 8 hours (Exhibit 34F at 3). Further, he opined claimant needed to change positions every 10 minutes, could only occasionally lift 5 pounds; could never perform postural movements; could never handle, finger or feel; could never push or pull; could never be exposed to unprotected heights, dangerous moving machinery, temperature extremes, pulmonary irritants or vibration; and could only occasionally be exposed to humidity or wetness, noise or motor vehicles (Exhibit 34F). Additionally, he opined claimant could not work a sedentary job 8 hours per day five days a week (Exhibit 34F).
>
> The opinion of Dr. Lescay is unsupported by medically acceptable clinical and laboratory diagnostic techniques, and is inconsistent with the other substantial evidence in the record (20 CFR 404. 1527(d)(2) and Social Security Ruling 96-2p). Dr. Lescay opined claimant could sit only six hours; but claimant testified his only limitation regarding sitting was that he might fall asleep. Further, he testified he had sat in the waiting room prior to the hearing for approximately an hour and he was able to sit through another hour during the hearing. Moreover, Mr. Cashbaugh indicated claimant sat through his hour-long examination, could get in and out of his chair comfortably and had no problems moving around (Exhibit 16F at 5). Additionally, Dr. Lescay opined claimant could not handle, finger or feel; but claimant testified he fed himself, gave himself insulin shots and was able to grab, finger and feel. Moreover, the Dr. Lescay's own examinations were generally benign and were no[t] indicative of someone who could only sit, stand and walk for a total of only 2.5 hours per day (Exhibits 14F, 25F and 34F). Thus, Dr. Lescay's opinion is patently inconsistent with the medical evidence of record, claimant's presentation at the hearing and claimant's own testimony. Therefore, his opinion is given little weight (20 CFR 404.1527).

(AR 25-26).

       Dr. Lescay also signed a mental RFC assessment, in which he indicated that plaintiff had a poor ability to deal the with public, deal with work stresses, maintain concentration, and carry out complex or detailed job instructions, and a fair ability to interact with co-workers, interact with supervisors, use judgment, function independently, related predictably in social situations and

6

demonstrate reliability (AR 834-35). The ALJ addressed these opinions as follows:

> Additionally, in November 2010 claimant's primary care physician Dr. Lescay opined claimant had fair to poor psychological abilities (Exhibit 34F at 7-8). But this opinion is wholly inconsistent with the medical evidence of record and Dr. Lescay's own treatment notes. The evidence demonstrates little, if any, complaints about depression, anxiety or any other mental health problems to Dr. Lescay or any other treating physicians (Exhibits 14F, 25F and 34F). Further, his only treatment is medication prescribed by Dr. Lescay. Dr. Lescay never referred claimant to a psychiatrist, psychologist, therapist or counselor. Additionally, claimant had a mostly normal mental status examination in January 2009 and Dr. Lescay himself indicated he had no evidence of depression or anxiety in December 2009 (Exhibits 16F and 25F at 20). Thus, the opinion of Dr. Lescay is given little weight (20 CFR 404.1527).

(AR 27).

There is no question that plaintiff has physical limitations due to his diabetes and coronary artery disease, as well as some mental limitations from his affective disorder. However, substantial evidence supports the ALJ's determination that Dr. Lescay's treatment notes (AR 526-55, 707-49, 828-35) did not support the extreme physical and mental limitations found by the doctor. Based on the record, the ALJ gave good reasons for assigning little weight to Dr. Lescay's opinions. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ committed reversible error by making improper credibility determinations.**

Plaintiff contends that the ALJ made improper credibility determinations. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility

determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ evaluated plaintiff's credibility as follows:

> [At the administrative hearing held on December 7, 2010] [c]laimant testified he quit smoking last year, but also testified he smoked as recently as November 2010. He testified he had been a diabetic since the age of 15 and had worked despite the diagnosis. He testified he did not drive much because he had problems with low blood sugar. He testified he drew unemployment for a period of time in 2009. He testified he told the government he was ready and willing to work, but he actually felt he was not able to work. He testified he could not work due to difficulty sleeping, and chest pain. Further, he testified he last used drugs in the early 80s and then testified he got sober in 1991. He testified he sat in the waiting [room] for an hour and the only thing that prevents him from sitting for long periods is falling asleep. Moreover, he testified he feeds himself, gives himself insulin shots and is able to grab, finger and feel.
>
> Claimant's testimony is not credible. He testified he told the government he was able to work so he could receive unemployment benefits, but he actually felt he could not work. He testified he quit smoking last year [i.e., 2009], but reported to Dr. Mulder that he was smoking a pack a day in November 2010 (Exhibit 32F). He testified he last used drugs in the early 1980s, but reported to Dr. Mulder that he stopped using drugs in the 1990s. Moreover, he reported he could not work due to significant difficulty sleeping. But there is little mention of sleeping difficulties in the record. Furthermore, Dr. Mulder indicated claimant sleep 8 hours out of 24 (Exhibit 32F at 3). Thus, after careful consideration of the evidence, I find

8

> claimant's medically determinable impairments could cause the alleged symptoms; but his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 22-23).

The ALJ also observed that plaintiff told a consultative psychologist, David Cashbaugh, J.r., M.A. that "[a]lthough his driver's license was expired, he indicated he continued to drive" (AR 24). In addition, the ALJ found that:

> [C]laimant's activities of daily living are not supportive of disability. Claimant reported that he liked to play games on the internet, camp, hunt and fish (Exhibit 16F at 2). Further, he reported doing dishes and laundry, watching television, using the computer, performing his own personal care and driving (Exhibit 16F at 3). Moreover, he reported playing with his grandson and dog, and vacuuming and cooking when he was able (Exhibit 32F).

(AR 27).

Plaintiff contends that the ALJ's credibility determination was not based on substantial evidence. The Court disagrees. The ALJ identified contradictions among the medical records, plaintiff's testimony, and other evidence. *Walters*, 127 F.3d at 531. In addition, the ALJ properly considered plaintiff's daily activities in evaluating credibility. *See Moore v. Commissioner of Social Security*, -- Fed.Appx. --, 2014 WL 3843791 at *2 (6th Cir. Aug. 5, 2014) ("[t]he ALJ also properly took into account [the claimant's] daily activities, which included caring for two school-aged children and performing household chores"); 20 C.F.R. 404.1529(c)(3)(i) ("[f]actors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities"). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence

supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

The record does not present a compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Plaintiff's claim of error is denied.

### C. The ALJ did not have substantial evidence to support his finding that plaintiff could perform light work.

Plaintiff contends that the ALJ failed to follow accurate testimony of the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115,

10

118 (6th Cir. 1994).

Here, the ALJ posed a hypothetical question to the VE which mirrored the RFC (AR 63-65). Based on that hypothetical question, the VE testified that plaintiff could perform 55,000 jobs in the region (AR 63-65). After the ALJ posed his hypothetical question, plaintiff's attorney asked the VE to consider some of the restrictions set forth in Dr. Lescay's RFC assessments. With respect to the physical limitations set forth in Dr. Lescay's RFC, especially the ability to sit, stand and walk, the VE stated that "[i]f we assume the limitations in Exhibit 34 [Dr. Lescay's physical RFC (AR 830-33)] are imposed . . . those limitations would not be compatible in competitive employment" (AR 65-66). With respect to the limitations set forth in Dr. Lescay's mental RFC assessment (AR 834-35), the VE acknowledged that such limitations would preclude employment (AR 66). Finally, plaintiff's attorney pointed out plaintiff's testimony that he would miss one to two days per week due to "his multiple conditions and his sleep deprivation at night together with his sugar level problems"), and asked the VE whether this absenteeism would preclude employment (AR 66-67). The VE answered in the affirmative (AR 67). Although the VE testified that the restrictions set forth in Dr. Lescay's RFC assessments were work preclusive, the ALJ gave little weight to those opinions (AR 26-27) and did not include those limitations in the RFC (AR 22). Similarly, the ALJ did not find plaintiff's testimony regarding his sleep deprivation credible (AR 22-23). The ALJ was not required to include these unsubstantiated limitations in the hypothetical question posed to the VE. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231. Accordingly, this claim of error is denied.

11

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  September 15, 2014                     /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge